OPINION
{¶ 1} This is an appeal of the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, Thomas Reese and granting permanent custody of Jonathan Belanger ("Jonathan") to appellee, Ashtabula County Children Services Board ("ACCSB").
{¶ 2} On December 6, 1999, appellee made an ex parte emergency request for temporary custody of Jonathan, alleging that "the child [was] suffering from illness or injury and [was] not receiving proper care and the removal [was] necessary to prevent the immediate or threatened physical or emotional harm." In support of its telephonic request, appellee filed the affidavit of ACCSB Caseworker Peter Laveck ("Laveck"). Laveck averred that "ACCSB homemaker services" and "Regional Home Health nursing care" were unable to provide Jonathan necessary supportive services because the child's mother, Jenna Belanger ("Jenna"), who was then fourteen years of age, lacked a stable home environment where the services could be performed.
{¶ 3} On December 6, 1999, Jonathan was placed in the emergency custody of the ACCSB, pursuant to an ex parte emergency telephone order granting appellee's request. Jonathan was placed in a "foster to adopt home."
{¶ 4} At the time ACCSB obtained custody of Jonathan, appellant was incarcerated in the Trumbull County Jail, serving an eighteen-month sentence, following a conviction for burglary, in violation of R.C.2911.12(A)(4)(C), a felony of the fourth degree. Prior to the burglary conviction, appellant had been sentenced to three years of community control, following a conviction for assaulting a peace officer, in violation of R.C. 2903.13(A)(C)(3), a felony of the fourth degree. Appellant was released from the Trumbull County Jail on October 28, 2000.
{¶ 5} On December 7, 2000, appellee filed a complaint alleging that Jonathan, who was then two months old, was a dependent child, as defined in R.C. 2151.04(C). At that time, appellant's paternity had not been established due to his incarceration in the Trumbull County Jail.
{¶ 6} On February 15, 2000, the juvenile court held a hearing on appellee's complaint. Jonathan was subsequently adjudicated dependent and committed to the temporary custody of the ACCSB pursuant to an order of disposition.
{¶ 7} On July 5, 2000, ACCSB filed a motion requesting modification of temporary custody to permanent custody. In October 2000, appellant moved the court for an order staying the proceedings until the paternity of Jonathan could be determined. Appellant's motion was denied; however, the court granted a continuance of the next scheduled hearing so that appellant could pursue a determination of paternity.
{¶ 8} On March 29, 2001, the court received appellant's paternity test, which indicated that Jonathan was his child. As a result, the court ordered that ACCSB file all the necessary motions to change its request for permanent custody to a request for an extension of temporary custody and file a case plan for appellant.
{¶ 9} On April 17, 2001, a case plan was established for appellant. On the same day, the court ordered appellant to "diligently work on [the] case plan to be reunified with [the] child." The case plan required appellant to: (1) obtain a psychological evaluation and follow any recommendation made; (2) attend and successfully complete parenting classes; (3) acquire and maintain safe housing; (4) maintain a stable source of income; and, (5) complete an anger management course and follow any recommendations.
{¶ 10} On May 7, 2001, ACCSB moved the court for a second extension of the temporary custody. After a hearing, the court granted the motion and extended temporary custody, until December 6, 2001.
{¶ 11} On July 29, 2001, appellant was committed to the Trumbull County Jail pending trial on: two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (2), felonies of the second degree; two counts of attempted murder, in violation of R.C. 2923.02(A) and 2903.02(A), felonies of the first degree; one count of criminal damaging, in violation of R.C. 2909.06(A)(1)(B), a first degree misdemeanor; and, one count of aggravated menacing, in violation of R.C.2903.21(A), a first degree misdemeanor. Because of his pre-trial confinement, appellant had approximately one hundred days to address the requirements set forth in the case plan.
{¶ 12} On August 22, 2001, ACCSB filed a motion requesting modification of temporary custody to permanent custody. Prior to the hearing on ACCSB's motion for permanent custody, Jonathan's mother, Jenna Belanger, executed an agreement to permanently surrender the child, on October 11, 2001.
{¶ 13} On October 31, 2001, the scheduled date of the permanent custody hearing, the child's paternal grandmother, Rosetta Reese ("Rosetta"), moved for custody. Rossetta was permitted to participate in the case plan. Rosetta, however, has not filed a notice of appeal, and, therefore, is not a party to this appeal.
{¶ 14} On February 5, 2002, an evidentiary hearing was held on ACCSB's motion for permanent custody. At the hearing, ACCSB presented the testimony of: Cheri Jones, an ACCSB Caseworker; Michelle Davis, Jonathan's foster mother; and, Jenna Belanger, Jonathon's biological mother. Rosetta and appellant testified on appellant's behalf.
{¶ 15} On April 30, 2002, the juvenile court awarded permanent custody of Jonathan to ACCSB. From this judgment, appellant raises the following assignment of error:
 {¶ 16} "[t]he trial court's findings of fact and decision to grant permanent custody were not supported by clear and convincing evidence and were against the manifest weight of the evidence."
{¶ 17} A trial court's judgment terminating parental rights and awarding permanent custody to an agency will not be reversed as against the manifest weight of the evidence if it is supported by clear and convincing evidence. In re Litz, (Nov. 5, 1998), 11th Dist. No. 2001-G-2367, 2001 Ohio App. LEXIS 5061, at *13.
{¶ 18} A court may grant permanent custody of a child to an agency if it determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody to the agency and (2) any of the following situations apply:
 {¶ 19} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 20} "(b) The child is abandoned.
 {¶ 21} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 22} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
{¶ 23} Thus, under R.C. 2151.414(B), the juvenile court must apply a two-pronged analysis when considering a motion for permanent custody. Generally, the juvenile court will adjudge whether one of the circumstances delineated in R.C. 2151.414(B)(1) is present before determining the best interest of the child. We note that prior to November 1, 1999, R.C. 2151.414(B) enumerated three circumstances. However, as amended, the statute lists four circumstances.
{¶ 24} If the juvenile court ascertains that one of the circumstances listed in R.C. 2151.414(B)(1) is present, the juvenile court will determine the best interest of the child. In the instant case, the court failed to make one of the mandatory findings set forth in R.C. 2151.414(B). Instead, the court found that "[a]ll three statutory factors alleged have been proven clearly and convincingly against Mr. Reese, and once the Court makes a finding that even one of the statutory factors exist, it is mandated to enter a finding that the child cannot and should not be placed with Mr. Reese." As noted, supra, R.C. 2151.414(B) previously set forth three statutory factors. However, the applicable version of the statute now enumerates four circumstances. Therefore, it is unclear which three statutory factors the court is referring to. Presumably, the court is referring to three of the four factors enumerated in section R.C. 2151.414(B)(1)(a)-(d); however, we are unable to conclude that the court found, by clear and convincing evidence, the existence of one or more of the factors enumerated in R.C. 2151.414(B)(1). The court's failure to fully discuss these factors renders its judgment facially defective and warrants its reversal. Thus, this matter must be reversed and remanded for the court to make one of the mandatory findings required under R.C. 2151.414(B)(1).
{¶ 25} Although we are reversing and remanding for the court to make one of the mandatory findings required under R.C. 2151.414(B)(1), we will examine the juvenile court's application of the second prong of the statutory analysis. Appellant's assignment of error deals with the second prong of the statutory analysis, to wit; whether it was in the best interest of the child to grant permanent custody to ACCSB.
{¶ 26} "In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 27} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 28} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 29} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 30} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 31} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)
{¶ 32} This court has previously held that the juvenile court must consider all the R.C. 2151.414(D) factors when making a determination of the best interest of a child in a permanent custody hearing. In reBailey (July 20, 2001), 11th Dist. No. 2001-G-2340, 2001 Ohio App. LEXIS 3293, at *13. "Failure to discuss each of these factors when determining the best interest of the child is prejudicial error. Thus, the record must show that the juvenile court considered all of the factors enumerated in R.C. 2151.414(D) when reaching its judgment, however, no one factor is dispositive." (Internal citations omitted.) Id., at *14-15.
{¶ 33} A review of the juvenile court's April 31, 2002 judgment entry reveals that the court complied with R.C. 2151.414(D)(1)-(4). In its consideration of R.C. 2151.414(D)(1), the court noted that, although Jonathan was over two years old at the time of the permanent custody hearing, appellant had only seen his son on five occasions since his birth, in a supervised setting, for one hour each visit. The court found that Jonathan's foster parents have been heavily invested in the extensive special needs associated with Jonathan's "CMV" virus.
{¶ 34} As required by R.C. 2151.414(D)(2), the court considered the child's wishes, as expressed, in this case, through the Guardian ad Litem, Jane Lesko, who believed that permanent custody was in Jonathan's best interest due to appellant's pre-trial confinement and failure to comply with the case plan.
{¶ 35} With respect to R.C. 2151.414(D)(3), the court found that from the time ACCSB obtained custody of Jonathan, on December 6, 1999, he remained in the custody of ACCSB, and in the same "foster to adopt home."
{¶ 36} Regarding R.C. 2151.414(D)(4), the court considered the testimony of Caseworker Cheri Jones, who attested that Jonathan needs a legally secured permanent placement, which cannot be achieved without a grant of permanent custody to ACCSB. The court also considered the testimony of Jonathan's mother, Jenna, who attested that she believed that it would be in Jonathan's interest to remain in his current placement.
{¶ 37} Appellant argues that the juvenile court's findings of fact, and its decision to grant ACCSB permanent custody, are against the manifest weight of the evidence. The crux of appellant's argument is that he could not comply with the case plan in just one hundred days. He also contends that the juvenile court erred in finding that appellant failed to follow through with any aspect of the case plan, other than visitation prior to incarceration.
{¶ 38} We note that appellant's time to comply with the case plan was limited to a period of approximately one hundred days because appellant was held in pre-trial confinement. In the one hundred days available to him, appellant failed to make any substantial efforts to follow through with any aspect of the case plan, except visitation. The case plan required that appellant: undergo a psychological evaluation and follow any recommendations made; compete parenting classes; maintain safe housing; maintain a stable source of income; and, complete an anger management course.
{¶ 39} Appellant's testimony supports the juvenile court's findings. Appellant attested that he had not undergone psychological testing, nor had he completed an anger management course. Appellant also testified that he had not completed parenting classes, but stated that he had "made phone calls" inquiring into parenting classes.
{¶ 39} Appellant admitted that the house was "disorganized" when Caseworker Cheri Jones visited, but explained that "he was trying to find a different residence at that time * * *." Caseworker Cheri Jones attested that appellant's housing condition was "deplorable."
{¶ 40} Finally, appellant argues that he was employed from the time he was released from prison. He attested that he began working at the Country Corner Café two weeks after his release from prison, in late October 2000; however, he quit a few months later, in either January or February 2001. Appellant then worked odd jobs until May or June 2001, when he was hired to work at DJ Auto. Thus, appellant argues, he was, in effect, employed from the time he was released from prison. However, the case plan required that appellant maintain stable
employment.
{¶ 41} Based on the foregoing, we conclude that the juvenile court's findings of facts and its decision to grant permanent custody of Jonathan to ACCSB, were supported by clear and convincing evidence. As a result, the juvenile court's judgment was not against the manifest weight of the evidence. Appellant's sole assignment of error is, therefore, not well taken.
{¶ 42} However, as discussed supra, the trial court failed to enter a finding that comports with the requirements enumerated in R.C.2151.414(B). Accordingly, the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is reversed and remanded for the trial court to enter findings consistent with this opinion.
WILLIAM M. O'NEILL, P.J., DIANE V. GRENDELL, J., concur.